# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| DAVID TUCK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No. |
| | ) |
| GENE SHROYER, | ) |
| US CONSTRUCTION CORPORATION, | ) |
| US SPECIALTY CORPORATION, and | ) |
| US SHARED SERVICES | ) |
| CORPORATION, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT AND JURY DEMAND

Plaintiff David Tuck ("Mr. Tuck"), by way of Complaint against defendants Gene Shroyer ("Mr. Shroyer"), US Construction Corporation ("Construction Corp."), US Specialty Corporation ("Specialty Corp.") and US Shared Services Corporation ("Shared Services Corp.," collectively with Mr. Shroyer, USC, Construction Corp. and Specialty Corp., the "Defendants"), hereby alleges as follows:

### PARTIES

1. Plaintiff Mr. Tuck is an individual residing in Hudson, New Hampshire.

2. Defendant Mr. Shroyer is an individual residing in Hall County, Georgia.

3. Defendant Construction Corp. is a corporation created under the laws of the State of Delaware and has a principal place of business located in Hudson, New Hampshire. Construction Corp. is a wholly owned subsidiary of US Consolidated, LLC ("USC").

4. Defendant Specialty Corp. is a corporation created under the laws of the State of Delaware and has a principal place of business located at 2419 Hilton Way, Gainesville, Georgia. Specialty Corp. is a wholly owned subsidiary of USC.

5. Defendant Shared Services Corp. is a corporation created under the laws of the State of Delaware and has a principal place of business located in Hudson, New Hampshire. Shared Services Corp. is a wholly owned subsidiary of USC.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction exists over Mr. Tuck's state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this civil action occurred in this judicial district.

## FACTS

8. Mr. Tuck has a background in accounting and financial management.

9. In the fall of 2020, Mr. Tuck, Mr. Shroyer and two other individuals, James Keese and David Koelzer, began discussing the formation of a business enterprise to perform industrial construction work in which they would each own a twenty-five percent (25%) ownership interest.

10. In November 2020, a certificate of formation for Kee Industries LLC was filed and certificates of incorporation for three wholly owned subsidiaries were filed with the Delaware Secretary of State.

11. Sometime thereafter, Mr. Keese and Mr. Koelzer determined that they would not participate in the proposed business venture, and, therefore, Mr. Tuck and Mr. Shroyer remained as fifty percent (50%) co-owners in the enterprise.

12. In January 2021, filings were made with the Delaware Secretary of State to change the name of Kee Industries LLC to USC and to change the names of the subsidiaries to Construction Corp., Specialty Corp. and Shared Services Corp. (collectively, the "Operating Companies").

13. Construction Corp. was created to perform non-union work, Specialty Corp. was created to perform union work, and Shared Services Corp. was created to own and rent equipment to Construction Corp. and Specialty Corp. necessary for their performance in various construction projects.

14. Each of the Operating Companies are wholly owned subsidiaries of USC.

15. USC is managed by its members – Mr. Tuck and Mr. Shroyer.

16. Mr. Tuck and Mr. Shroyer agreed that Mr. Tuck would be employed by the Operating Companies as their Chief Financial Officer.

17. Mr. Tuck and Mr. Shroyer agreed that Mr. Shroyer would be employed by the Operating Companies and would be responsible for managing prospective construction projects.

18. Mr. Tuck and Mr. Shroyer agreed that, as employees, they would both be entitled to receive an identical annual salary in the amount of $180,000.00.

19. In order to assist with the fledgling enterprise's cashflow, Mr. Tuck's entire salary was deferred until the enterprise generated sufficient revenues and profits.

20. The deferral of Mr. Tuck's salary was at all times reflected within the enterprise's financial books and records.

21. Throughout the course of 2021, Mr. Tuck worked on a full-time basis on behalf of the Operating Companies, as their Chief Financial Officer, and while they provided industrial

construction and construction management services in connection with multiple, significant projects in, *inter alia*, Georgia, Ohio, and Alabama.

22. Pursuant to the agreement between Messrs. Tuck and Shroyer, Mr. Shroyer was to supervise and oversee the actual construction projects, while Mr. Tuck was to supervise and oversee all administrative and internal operational matters relating to the business, including all financial and legal aspects.

23. As a result of Mr. Tuck's efforts:

    a. All of the entities involved in the enterprise were organized;

    b. USC and certain of the Operating Companies entered into a factoring arrangement with a third-party financing company, without which the enterprise would never have been able to perform work on the substantial jobs they were awarded;

    c. The books and records of the Operating Companies were established and maintained;

    d. All accounting systems were implemented and supervised in connection with establishing a "cost plus" billing system for newly formed entities with dozens of employees in multiple states working on multiple projects;

    e. All federal, state and local permits in connection with multiple projects in multiple states were obtained;

    f. Bids were submitted on multiple potential union and non-union jobs based on Mr. Tuck's calculations of costs and profitability;

    g. Automated invoicing systems were implemented, permitting dozens of employees in multiple states (with different job-types and at different levels

     of seniority) to easily record their time so that the Operating Companies could invoice, in a timely fashion, their customers for the work performed;

  h. Payroll systems were implemented and maintained, including adjustments for benefits and wage garnishments for employees in multiple states;

  i. Employee benefit programs were established and maintained in compliance with all applicable laws;

  j. Employees were added to and removed from payroll and the Operating Companies' employee benefit programs as jobs in various states began, continued and ultimately concluded;

  k. Invoices for materials and tools necessary for the Operating Companies' projects were recorded, paid and duly invoiced to the appropriate customer;

  l. Federal, state and local taxes were accrued and paid;

  m. Federal and state tax returns were prepared and filed;

  n. Information technology infrastructure was established for the creation and maintenance of company-related email accounts and electronic document management;

  o. Certain prospective customers were jointly marketed by Messrs. Tuck and Shroyer; and

  p. Legal issues, including issues relating to performing both union and non-union work, were analyzed and addressed.

  24. Mr. Shroyer was paid his salary of approximately Two Hundred Thousand Dollars ($200,000.00) by Construction Corp. and received benefits valued at approximately Thirty-Three Thousand Dollars ($33,000.00) for the calendar year 2021.

25. Based on information and belief, Mr. Shroyer continues to be paid a salary by, and receive benefits from, Construction Corp. to the present day.

26. Once the enterprise began generating profits, Mr. Shroyer unilaterally terminated Mr. Tuck's employment in December 2021 and has since alleged that Mr. Tuck never possessed any ownership interest in USC and was not employed by either USC or any of the Operating Companies.

27. To date, Mr. Tuck has not been paid any duly earned wages by the Operating Companies.

28. Indeed, while Mr. Shroyer has been, and continues to be, paid his full wages, Mr. Tuck has never received a single dollar from any of the Defendants despite his extensive, year-long efforts on behalf of the Operating Companies.

## COUNT I
## FAILURE TO PAY WAGES
## IN VIOLATION OF FLSA
### (Tuck v. Defendants)

29. Mr. Tuck repeats and incorporates by reference the allegations in Paragraphs 1 through 28 as if the same were fully set forth at length herein.

30. The Fair Labor Standards Act of 1938 (the "FLSA"), 29 U.S.C. § 201, *et seq.*, applied to Mr. Tuck's employment with the Operating Companies at all times relevant herein.

31. Throughout the entirety of Mr. Tuck's employment, the Operating Companies failed and refused to pay Mr. Tuck his duly earned wages in the approximate amount of $170,000.00.

32. The Operating Companies' violations of the FLSA as alleged herein have been done in an intentional, willful, and bad faith manner.

33. Mr. Shroyer possessed a significant ownership interest in the business enterprise and exercised operational control over the Operating Companies.

34. Mr. Shroyer exercised a substantial degree of control over the Operational Companies' financial affairs and compensation practices, especially as it related to Mr. Tuck.

35. As a direct and proximate result of the aforesaid willful violations of the FLSA, duly earned wages have been unlawfully withheld by the Defendants from Mr. Tuck for which the Defendants are liable in an amount to be determined at trial, together with an additional equal amount as liquidated damages, interest, reasonable attorneys' fees, and costs of this civil action.

36. The Operating Companies are under a duty imposed by the FLSA, 29 U.S.C. § 211(c), to maintain and preserve payroll and other employment records with respect to Mr. Tuck from which the amounts of the Operating Companies' liability can be ascertained.

**COUNT II**
**FAILURE TO PAY OVERTIME**
**IN VIOLATION OF FLSA**
**(Tuck v. Defendants)**

37. Mr. Tuck repeats and incorporates by reference the allegations in Paragraphs 1 through 36 as if the same were fully set forth at length herein.

38. Throughout the entirety of his employment, Mr. Tuck frequently worked in excess of forty (40) hours per workweek.

39. During the times that Mr. Tuck worked in excess of forty (40) hours in a week, the Operating Companies failed and refused to pay Mr. Tuck his duly earned wages, let alone at a rate of one-and-one-half times his regular rate of pay.

40. Section 7(a) of the FLSA, 29 U.S.C. § 207(a)(1), provides that employees shall be paid overtime compensation at a rate of not less than one-and-one-half times their regular rate of pay for all hours worked in excess of forty (40) hours per workweek.

41. The Operating Companies have violated FLSA § 207(a)(1) by failing and refusing to compensate Mr. Tuck at a rate of not less than one-and-one-half times his regular rate of pay for all hours worked in excess of forty (40) hours in any given workweek.

42. The Operating Companies' violations of the FLSA as alleged herein have been done in an intentional, willful, and bad faith manner.

43. Mr. Shroyer possessed a significant ownership interest in the business enterprise and exercised operational control over the Operating Companies.

44. Mr. Shroyer exercised a substantial degree of control over the Operational Companies' financial affairs and compensation practices, especially as it related to Mr. Tuck.

45. As a direct and proximate result of the aforesaid willful violations of the FLSA, duly earned wages have been unlawfully withheld by the Defendants from Mr. Tuck for which the Defendants are liable in an amount to be determined at trial, together with an additional equal amount as liquidated damages, interest, reasonable attorneys' fees, and costs of this civil action.

46. The Operating Companies are under a duty imposed by the FLSA, 29 U.S.C. § 211(c), to maintain and preserve payroll and other employment records with respect to Mr. Tuck from which the amounts of the Operating Companies' liability can be ascertained.

## COUNT III
## VIOLATION OF NEW HAMPSHIRE
## WAGE AND HOUR LAWS
## (Tuck v. Defendants)

47. Mr. Tuck repeats and incorporates by reference the allegations in Paragraphs 1 through 46 as if the same were fully set forth at length herein.

48. New Hampshire wage and hour laws, RSA 275:1, *et seq.*, applied to Mr. Tuck's employment with USC and the Operating Companies at all times relevant herein.

49. The Operating Companies have failed and refused to pay Mr. Tuck his duly earned wages both throughout the entirety of his employment and at or upon his termination in the total, approximate amount of $170,000.00.

50. The Operating Companies failure to pay Mr. Tuck's duly earned wages was done willfully and without good cause.

51. The Operating Companies had the financial ability to pay Mr. Tuck's duly earned wages.

52. Mr. Shroyer knowingly permitted the Operating Companies to fail or refuse to pay Mr. Tuck his duly earned wages.

53. As a direct and proximate result of the aforesaid willful violations of New Hampshire wage and hour laws, Mr. Tuck's duly earned wages have been unlawfully withheld by Defendants for which Defendants are liable in an amount to be determined at trial, together with liquidated damages, interest, reasonable attorneys' fees, and costs of this civil action.

## COUNT IV
## BREACH OF CONTRACT AND THE COVENANT
## OF GOOD FAITH AND FAIR DEALING
### (Tuck v. Operating Companies)

54. Mr. Tuck repeats and incorporates by reference the allegations in Paragraphs 1 through 53 as if the same were fully set forth at length herein.

55. Mr. Tuck entered into a valid and enforceable contract with the Operating Companies whereby Mr. Tuck provided services, as the Operating Companies' Chief Financial Officer, and, in exchange, the Operating Companies agreed to pay Mr. Tuck an annual salary of $180,000.00.

56. The Operating Companies materially breached their contract with Mr. Tuck by failing to compensate him in the form of his annual salary.

57. The Operating Companies failure and refusal to compensate Mr. Tuck in the form of his annual salary also constitutes a breach of the implied covenant of good faith and fair dealing inherent in Mr. Tuck's contract.

58. As a direct and proximate result of this breach of contract and the implied covenant of good faith and fair dealing inherent therein, Mr. Tuck has suffered damages in an amount to be determined at trial.

## COUNT V
## QUANTUM MERUIT
### (Tuck v. Operating Companies)

59. Mr. Tuck repeats and incorporates by reference the allegations in Paragraphs 1 through 58 as if the same were fully set forth at length herein.

60. As Chief Financial Officer, Mr. Tuck performed services for the benefit of the Operating Companies.

61. Mr. Tuck rendered services with the reasonable expectation of being paid by the Operating Companies, including, without limitation, his annual salary.

62. The Operating Companies, having reason to believe that Mr. Tuck was acting with the expectation of being compensated, permitted Mr. Tuck to render services as their Chief Financial Officer without objection.

63. The Operating Companies have unjustly retained the benefit of Mr. Tuck's services without compensating him.

64. As a direct and proximate result of the Operating Companies' actions, Mr. Tuck has suffered damages in an amount to be determined at trial.

## PRAYERS FOR RELIEF

**WHEREFORE**, Mr. Tuck respectfully requests that this Honorable Court:

i. Enter judgment in Mr. Tuck's favor and that he be awarded damages in an amount to be determined at trial, together with liquidated damages, interest, reasonable attorneys' fees, and the costs of this action; and

ii. Grant such other and further relief as this Court deems just and proper.

## JURY DEMAND

Mr. Tuck demands a trial by jury on all claims so triable.

Dated: May 3, 2022

Respectfully submitted,

**DAVID TUCK**,
By his attorneys,

*/s/ Robert R. Berluti*
Robert R. Berluti (NH Bar No. 16633)
Michael A. Bednarz (*pro hac vice* forthcoming)
**BERLUTI MCLAUGHLIN & KUTCHIN LLP**
44 School Street, 9th Floor
Boston, MA 02108
Tel:   (617) 557-3030
Fax:   (617) 557-2939
Email: rberluti@bmklegal.com
            mbednarz@bmklegal.com