UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

David Tuck

      v.                            Civil No. 22-cv-152-LM
                                      Opinion No. 2024 DNH 061 P

Gene Shroyer, et al.

## **O R D E R**

After a trial in this court, the jury awarded plaintiff David Tuck all of his unpaid wages, as well as liquidated damages, against defendant Gene Shroyer and three corporate defendants: US Construction Corporation, US Specialty Corporation, and US Shared Services Corporation (together, the "Corporations"). Tuck originally brought two claims under the Fair Labor Standards Act ("FLSA"), one claim under the New Hampshire wage law, one claim for breach of contract, and one claim for quantum meruit. The case proceeded to a jury trial on the state law claims only, and the jury returned a verdict in Tuck's favor on the state wage law claim.[1] Tuck now moves for an award of attorney fees and costs in the amount of $227,783.88, pursuant to Federal Rule of Civil Procedure 54(d) and RSA 275:53, III. Doc. no. 77. Defendants object, arguing that Tuck is not entitled to a fee award and disputing the amount of fees and costs Tuck requests.

For the following reasons, the court grants Tuck's motion for attorney fees and costs, but in a reduced amount.

---

[1] Given the verdict in Tuck's favor on this claim, the jury did not return verdicts on the breach of contract claim or the quantum meruit claim.

**JURISDICTION**

Although neither party raises the issue of subject-matter jurisdiction, the court has an independent obligation to address it. ST Eng'g Marine, Ltd. v. Thompson, Maccoll & Bass, LLC, P.A., 88 F.4th 27, 32 (1st Cir. 2023). The court had federal question jurisdiction over Tuck's FLSA claims, see 28 U.S.C. § 1331, and supplemental jurisdiction over his state law claims, see 28 U.S.C. § 1367(a). Tuck voluntarily dismissed the federal claims on the eve of trial. See doc. no. 57. Rather than dismiss the state law claims pursuant to 28 U.S.C. § 1367(c), after the parties had expended substantial resources in preparing for trial, the court elected to retain jurisdiction over Tuck's state law claims. See 28 U.S.C. § 1367(c) (providing that the court "may" decline to exercise supplemental jurisdiction when all claims over which it had original jurisdiction have been dismissed); Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998) (explaining that, where all federal claims have been dismissed, a court must "engag[e] in a pragmatic and case-specific evaluation" to determine whether to retain supplemental jurisdiction, considering factors such as "the interests of fairness, judicial economy, [and] convenience").

The court likewise exercises supplemental or ancillary jurisdiction over this post-trial fee dispute because the issues are so closely related to the underlying case that the dispute can be considered part of the same case or controversy. Cf. Law Offs. of David Efron v. Matthews & Fullmer L. Firm, 782 F.3d 46, 52 (1st Cir. 2015) (explaining, in a case involving only state law claims, that federal courts may exercise "authority under the doctrine of ancillary jurisdiction to resolve fee

disputes between parties and their attorneys that arise out of the underlying litigation"); see also Knauss v. Atrium Med. Corp., --- F. Supp. 3d ---, No. 18-cv-1187-LM, 2023 WL 6216608, at *2 (D.N.H. Sept. 25, 2023) (noting, in a case involving only state law claims and non-diverse parties, that "[g]enerally, . . . the court only has ancillary jurisdiction to fix the amount of costs and attorney fees to be paid from one party in the case to another[]"); Wright & Miller, 13 Fed. Prac. & Proc. § 3523 (3d ed. Apr. 2023 update) ("Today, the terms 'ancillary,' 'pendent,' and 'supplemental' are all used, essentially interchangeably.").

## BACKGROUND

Tuck filed this suit in May 2022, seeking damages for unpaid wages from the Corporations and from Shroyer, the Chief Executive Officer of the Corporations. Tuck alleged that defendants failed to pay him his salary as the Chief Financial Officer ("CFO") of the Corporations. After the court granted partial summary judgment for defendants—limiting Tuck's available damages under the FLSA to the federal minimum wage—Tuck abandoned his FLSA claims on the eve of trial. Tuck's three state law claims proceeded to a jury trial in January 2024.

On January 26, 2024, the jury returned a verdict in Tuck's favor. The jury indicated on a special verdict form that defendants owed Tuck $169,278.72 in unpaid wages for violating the New Hampshire wage law. The jury further found that the defendants willfully and without good cause violated the wage law, which entitled Tuck to a liquidated damages award equal to his unpaid wages under RSA 275:44, IV. Additionally, because the parties stipulated that Shroyer acted on behalf

of the Corporations and the jury found the violation was willful, Shroyer is personally liable for the judgment. <u>See</u> RSA 275:42, I, V.

Attorneys Robert Berluti and Michael Bednarz, partners at the law firm Berluti McLaughlin & Kutchin LLP, represented Tuck. Throughout the pendency of this case, a parallel lawsuit in Georgia state court regarding the parties' ownership interest in the Corporations' holding company has been ongoing. Berluti and Bednarz, working with local counsel in Georgia, also represent Tuck in that litigation.

After the jury returned a verdict in Tuck's favor in the instant case, Tuck moved for attorney fees. Defendants object on numerous grounds. The court requested supplemental briefing from the parties explaining (1) the extent to which Tuck sought fees for the litigation in Georgia, and why such a request would be reasonable; and (2) the extent to which hours billed for work on the FLSA claim could be separated from hours worked on the New Hampshire wage law claim. Both parties filed supplemental briefs.

## DISCUSSION

I.   <u>Tuck's Entitlement to Attorney Fees and Costs</u>

Having prevailed at trial, Tuck now seeks attorney fees. Under New Hampshire law, a request for attorney fees "must be grounded upon statutory authorization, a court rule, an agreement between the parties, or an established exception to the rule that each party is responsible for paying his or her own counsel fees." In the <u>Matter of Hampers & Hampers</u>, 154 N.H. 275, 289 (2006) (quotation

omitted). Here, Tuck contends that attorney fees should be awarded pursuant to the New Hampshire wage law. See RSA 275:53, III. Under that statute, when a plaintiff obtains a judgment in his favor, a court may "allow costs of the action, and reasonable attorney's fees, to be paid by the defendant." Id. The New Hampshire Supreme Court has held that, when a plaintiff succeeds on a wage law claim, the trial court "should exercise its statutory discretion by awarding reasonable counsel fees, unless the court further finds particular facts that would render such an award inequitable." Ives v. Manchester Subaru, Inc., 126 N.H. 796, 804 (1985). New Hampshire courts interpret the wage law, "and the attorney's fees provision in particular, to effectuate the [wage law's] broad purpose of protecting employees." Demers Agency v. Widney, 155 N.H. 658, 664 (2007).

Given Tuck's success on his wage law claim, the court should award him reasonable attorney fees unless doing so would be inequitable. Defendants argue that a fee award would be inequitable because the liquidated damages award already doubles Tuck's recovery under the New Hampshire wage law, see RSA 275:44, IV, and an additional award of attorney fees would be a windfall. Defendants further contend that a fee award will bankrupt Shroyer, since the Corporations are now defunct. Finally, defendants assert that the litigation "was a battle between two sophisticated businessmen," rather than a "David and Goliath battle" that the wage law is ordinarily intended to cover. Doc. no. 82 at 3.

Defendants fail to demonstrate that an award of reasonable attorney fees would be inequitable. Tuck's damages under the New Hampshire wage law—the

value of his unpaid wages—amount to $169,278.72. Tuck was also awarded an equal amount of liquidated damages based on the jury's finding of a willful violation of the wage law. See RSA 275:44, IV. Despite this considerable award, if Tuck's attorneys deducted their fee from the total award of unpaid wages and liquidated damages, Tuck would likely recoup damages below the value of the unpaid wages he sought to recover in this case. Such an outcome would not effectuate the wage law's "broad purpose of protecting employees." Demers, 155 N.H. at 664. This is especially true where the jury found that defendants willfully violated the wage law.[2] See doc. no. 74 at 11-12 (jury instructions) (explaining that wage law defendants act "willfully and without good cause" when they fail to pay wages "despite knowing their obligation to pay and despite their financial ability to pay").

Therefore, Tuck is entitled to his reasonable attorney fees and costs.

A.    Calculating the Amount of Tuck's Fee Award

New Hampshire state courts use "eight guiding factors" to determine a reasonable fee award. E.g., Toy v. City of Rochester, No. 2020-0426, 2021 WL 3013470, at *1 (N.H. June 8, 2021); Town of Barrington v. Townsend, 164 N.H. 241, 250 (2012). The factors are: "(1) the amount involved; (2) the nature, novelty, and difficulty of the litigation; (3) the attorney's standing; (4) the skill employed; (5) the

---

[2] Indeed, Shroyer's and Tuck's relative parity in bargaining positions, as emphasized by defendants, supports an award of fees. Shroyer is a sophisticated businessman represented by counsel who was able to weigh the risks of trial, and the court presumes Shroyer was aware of the possibility that a defeat at trial could lead to an award of fees.

time devoted; (6) the customary fees in the area; (7) the extent to which the attorney prevailed; and (8) the benefit bestowed on the clients." Toy, 2021 WL 3013470 at *1.

Federal courts generally apply the lodestar analysis. Wells Fargo Bank, Nat'l Ass'n as Tr. for Option One Mortg. Loan Tr. 2007-2, Asset-Backed Certificates, Series 2007-2 v. Moskoff, No. 1:17-CV-136-JL, 2021 WL 4798102, at *2 (D.N.H. Oct. 14, 2021), aff'd, Nos. 21-1985 & 21-1986, 2023 WL 3839392 (1st Cir. Mar. 3, 2023). The "lodestar" is the product of the reasonable number of hours counsel spent on a matter multiplied by the reasonable hourly rate for counsel's services. Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Emps. v. Ray Haluch Gravel Co., 745 F.3d 1, 5 (1st Cir. 2014). To calculate the lodestar, the court must determine both the reasonable hourly rates for counsel and the number of hours reasonably spent on the action. Id. "The lodestar may be further adjusted based on other considerations." Id. "Prominent among these considerations is the degree of a prevailing party's success." Id.

Tuck suggests that the court use a modified version of the lodestar approach—using the lodestar method while also considering the New Hampshire factors—to determine whether the proposed fee is reasonable. Defendants do not object to this approach. Because New Hampshire's eight guiding factors are not inconsistent with the lodestar analysis, Wells Fargo, 2021 WL 4798102, at *3, the court will use both the lodestar approach and the state factors to assess the reasonableness of Tuck's fee request.

B.    Reasonable Hourly Rates

The hourly rate determination under New Hampshire law and federal law is similar. A reasonable hourly rate for an attorney or a legal professional is based on "prevailing rates in the community for lawyers [and legal professionals] of like qualifications, experience, and competence." Cent. Pension Fund, 745 F.3d at 5; see Funtown USA, Inc. v. Town of Conway, 129 N.H. 352, 356-57 (1987); Couture v. Mammoth Groceries, Inc., 117 N.H. 294, 297 (1977) (listing reasonableness factors, including "customary fees in the area"). The burden is on the party seeking fees to "establish the market rate for comparable services with satisfactory evidence." de Laire v. Voris, No. 21-cv-131-JD, 2022 WL 433068, at *3 (D.N.H. Jan. 14, 2022) (quotation omitted); Townsend, 164 N.H. at 251 ("'[C]ustomary fees in the area' is a factor to consider in determining the reasonableness of the overall fee . . . ."). First Circuit "precedent allows a court to choose counsel's standard rate, or the prevailing market rate in the forum, or a reasonable rate in between." Gross v. Sun Life Assurance Co. of Can., 880 F.3d 1, 24 (1st Cir. 2018) (internal quotation marks and quotation omitted); cf. Townsend, 164 N.H. at 251 ("[T]he absence of . . . evidence [of customary rates in the community] does not render [a] trial court's conclusion incorrect.").

In support of his request for fees, Tuck submitted an affidavit from Berluti, law firm website biographies for Berluti and Bednarz, and invoices for the services rendered. See doc. no. 77-1. Berluti billed between $475 and $550 per hour; his hourly rate increased annually. He is a senior partner at the Boston-based law firm

of Berluti McLaughlin & Kutchin LLP. He has been a member of the Massachusetts bar since 1980 and is also a member of the New Hampshire bar. Berluti's website biography charts a lengthy history of trial experience in business and employment cases. Berluti's affidavit states that he focuses his practice on business, commercial, and employment litigation.

Bednarz is also a partner at Berluti McLaughlin & Kutchin LLP and has been a member of the Massachusetts bar since 2013. Bednarz similarly practices in business, commercial, and employment litigation, and his biography outlines his civil trial experience. He billed between $400 and $450 per hour, as his hourly rate increased annually as well.

Tuck also seeks fees for two legal professionals: paralegals April Jastrzebska and Victoria Wissa. Jastrzebska and Wissa are paralegals at Berluti McLaughlin & Kutchin. Jastrzebska has been working as a paralegal since 1996, and Wissa since 2019. Jastrzebska began the matter billing at an hourly rate of $175, and at various other times billed at $200.[3] Wissa billed at an hourly rate of $150.

In his affidavit, Berluti represents that the requested rates are consistent with rates charged for comparable counsel in New Hampshire and the greater Boston area for similar matters. In support of his fee request, Tuck cites cases in Massachusetts state courts in which courts awarded fees ranging from $210 to

---

[3] Although Jastrzebska's rate appeared to increase annually as well, her rate dipped from $200 in 2023 back to $175 in 2024. Tuck did not explain the rate increases or decreases with respect to any of the professionals working on his case.

$885. <u>See</u> doc. no. 77 at 5 n.3 (collecting cases). Tuck also cites cases in which reasonable paralegal hourly rates ranged from $110 per hour to $195 per hour. <u>Id.</u> Defendants do not object to the requested rates.

Given the attorneys' background practicing in employment law and the comparable rates in the New Hampshire and Boston markets, the court finds the requested fee rates for Berluti and Bednarz reasonable. <u>See</u> de Laire, 2022 WL 433068, at *3 n.2 ("Hourly rate of $500 may be a reasonable rate for a lawyer in Boston under demonstrated circumstances."); Wells Fargo, 2021 WL 4798102, at *3 (approving $400 hourly rates for partners at a large law firm); Townsend, 164 N.H. at 251; <u>see also</u> Sparks v. Allstate Med. Equip., Inc., No. 1:14-cv-166, 2016 WL 5661758, at *2 (D. Idaho Sept. 29, 2016) ("The fact that hourly rates have increased since Plaintiff's counsel worked for the same firm, is not surprising nor unreasonable."). The requested fee rates for the paralegals in this case are also reasonable. <u>See</u> Howarth v. Carsanaro Landscaping, Inc., No. 22-cv-10998-DLC, 2023 WL 5978298, at *9 (D. Mass. July 21, 2023) (determining the hours attributed to a paralegal were reasonable and "billed at a relatively modest average rate of $200 per hour"); Wells Fargo, 2021 WL 4798102, at *3 (approving a paralegal rate of $150); Townsend, 164 N.H. at 251. The court will therefore use Tuck's requested rates in calculating an appropriate fee award.

C.    <u>Reasonable Number of Hours Worked</u>

Having determined that the rates Tuck seeks are reasonable under both state and federal law, the court must determine the number of hours reasonably spent by

Tuck's counsel, and exclude all hours that are excessive, redundant, or otherwise unnecessary. Cent. Pension Fund, 745 F.3d at 5. Tuck seeks to recover fees for the following hours of legal work:

- 193.5 hours for Attorney Berluti;
- 296.86 hours for Attorney Bednarz;
- 149 hours for Paralegal Jastrzebska; and
- 21.5 hours for Paralegal Wissa.
- Total: 660.86 hours.

Tuck contends that the hours requested are reasonable, particularly in light of his proposal to reduce his fee award by 15% to account for any inadvertent redundancies or overcharges.[4] Rather than accept Tuck's off-the-top reduction, defendants urge the court to strike some of the requested hours. First, defendants argue that hours spent on discovery in this case overlap with hours spent on discovery in the pending litigation in Georgia state court. Second, defendants argue that any hours involving Attorney Kerry Northup, an attorney at plaintiff's counsels' firm, should be stricken because Northup previously represented the Corporations. Third, defendants argue that the court should strike hours spent on Tuck's FLSA claim because Tuck abandoned that claim before trial. Finally, defendants contend that some of counsel's hours are irrelevant, excessive, or unnecessary.

The court will address each of these arguments in turn.

---

[4] Multiplying the proposed rates by the proposed hours yields a total fee of $256,229.50. A 15% reduction leaves a proposed fee of $217,795.07.

1.  Discovery Involving Both the New Hampshire Case and the
    Georgia Case

Defendants first argue that counsels' work on discovery in this case is

duplicative of the discovery in the litigation in Georgia, which would mean that

Tuck seeks fees for work done in a different case. Tuck responds that the fees for

the Georgia litigation were separately billed and were not submitted to this court.

He contends that the only fees sought concern the review of documents in the

instant litigation, the depositions of Tuck and Shroyer, and the admissions that

were produced in this case. The parties also apparently stipulated that the

depositions of Tuck and Shroyer would be used in both cases as a cost-saving

measure.

Defendants are "willing to take Tuck's attorneys' word" that the only fees

submitted to the court are for the instant litigation. Doc. no. 87 at 1. But they

maintain that the court should, at a minimum, divide in half the fees associated

with discovery to account for the Georgia litigation.

The court has carefully reviewed the attorneys' invoices and the parties'

briefing. The bills submitted reflect the work of Tuck's counsel in this litigation, and

Tuck's supplemental briefing sufficiently identifies the specific categories of work

done in discovery. Specifically, Tuck notes that he only seeks fees for gathering and

reviewing documents, drafting requests for admission, preparing for and

participating in the depositions of Tuck and Shroyer, and working on third-party

subpoenas in this case. See doc. no. 86. The court finds the fees sought for discovery

12

are reasonable and supported by the timesheets. Therefore, the court will not strike hours spent on discovery.

### 2.   Timesheet Entries Involving Attorney Northup

Defendants next argue that any timesheet entries mentioning Northup should be stricken because he formerly represented the Corporations and therefore owed them a fiduciary duty. Some of the hours for which Tuck requests fees include time his attorneys spent corresponding or working with Northup. In other words, some entries for the work of Berluti and Bednarz mention Northup. But Tuck contends that he is not seeking fees for Northup's hours and excludes those hours from the proposed fee award. Defendants cite no authority to support their position that certain hours billed by Berluti and Bednarz must be stricken because those hours involved correspondence or work with Northup. The court finds no basis to strike the hours in which Northup is merely mentioned.

### 3.   Hours Billed for Tuck's FLSA Claim

Defendants' third argument is that the court should subtract all fees related to the FLSA claim, which Tuck abandoned just before trial. Generally, "no fee may be awarded for services on [an] unsuccessful claim." Bogan v. City of Boston, 489 F.3d 417, 428 (1st Cir. 2007) (quoting Hensley, 461 U.S. at 435). This rule does not apply, however, "where both the successful and unsuccessful claims arose from the same common core of facts or were based on related legal theories." Id. Fees for unsuccessful claims are, therefore, excluded from the lodestar calculation only when the claims rely on distinct facts or legal theories. Id.

Defendants identified specific time entries attributed to the FLSA claim. Bednarz spent 2.5 hours researching an FLSA exemption and potential defamation claim. Defendants also identify 7.3 hours of Berluti's time attributed in part to the FLSA claim. Each of Berluti's line items, however, includes work done on matters other than the FLSA claim.

The court declines to reduce the bill for time Tuck's attorneys spent on the FLSA claim. The FLSA claim and the New Hampshire wage law claim stem from the same set of facts. Both claims arose out of defendants' failure to pay Tuck his salary for working as the Corporations' CFO. Under both the FLSA and the New Hampshire wage law, Tuck could obtain damages for at least some of his unpaid wages. The key difference in the claims is the amount of wages Tuck could recover. Under the FLSA, Tuck could only recoup his unpaid salary up to the federal minimum wage. Under the New Hampshire wage law, however, Tuck could obtain damages for the full value of his salary. Thus, the claims arose out of a common factual core and relied on similar legal theories. For these reasons, the court finds no reason to reduce the fee award for time spent on this claim.

4.  <u>Excessive or Unnecessary Hours</u>

Defendants' final argument is that some of the hours billed are excessive or unnecessary. Where the prevailing party provides timesheets that are difficult to evaluate, "the court is hampered in ascertaining whether those hours were excessive, redundant, or spent on irrelevant issues. In such a circumstance, the

court may adjust those entries to achieve an equitable result." Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 340 (1st Cir. 2008) (internal citation omitted).

Defendants object to (1) a duplicative charge for 4.1 hours ($2,050 in fees) for Berluti to attend Tuck's deposition; (2) hours billed related to an April 2023 settlement proposal, purportedly solely in the Georgia matter; and (3) hours billed from a mediation which also involved the Georgia litigation.[5]

First, as to the duplicative charge, the line item for Berluti's time appears identical to another 4.1-hour charge. Tuck does not, however, address the duplicative charge in his briefing. Because Tuck has failed to account for this seemingly duplicative charge, the court strikes as unnecessary 4.1 hours of Berluti's time, or $2,050 in fees.

Second, with respect to the April 2023 settlement proposal, defendants contend that the settlement only applied to the Georgia litigation. Tuck does not respond to this argument. The timesheet line items for the settlement proposal are threadbare. Those entries indicate that Bednarz spent 0.4 hours "[c]orrespond[ing] with opposing counsel regarding depositions and settlement," and "[f]orward[ing] [the] settlement offer to [his] client." Doc. no. 82-1 at 40. Bednarz then spent another 0.4 hours "[c]orrespond[ing] with [his] client regarding [the] offer to settle." Id. Without more, the court is unable to determine whether these entries are

---

[5] Defendants also object to time apparently spent on a different matter, see doc. no. 77-1 at 52, and hours an attorney spent scanning documents, see doc. no. 77-1 at 45. In both instances, the work was done by an attorney for whom Tuck does not seek fees. Therefore, the court need not consider these objections.

inappropriately billed to the New Hampshire litigation, as defendants contend. The court therefore strikes the 0.8 hours, or $340.00, Bednarz spent working on the settlement proposal.

Third and finally, as to the mediation, the timesheet entries do not distinguish between time spent on the instant litigation and time spent on the Georgia case. Tuck maintains that, with the mediation, the parties sought a "global resolution" of all claims. Doc. no. 77 at 5. However, Tuck's assertion about the intended outcome of the mediation does not account for the time his attorneys actually spent preparing for and mediating the distinct lawsuits. The court is therefore unable to determine the extent to which Tuck's attorneys devoted their time to the Georgia litigation instead of the New Hampshire case. The court reduces the fees requested for mediation by 50%, which equals 30.35 hours or $12,050. See Torres-Rivera, 524 F.3d at 340.

With these combined reductions, the court concludes that the hours Tuck's attorneys reasonably expended representing him in this action are as follows:

- 177.7 hours for Attorney Berluti;

- 281.71 hours for Attorney Bednarz;

- 144.7 hours for Paralegal Jastrzebska; and

- 21.5 hours for Paralegal Wissa.

- Total: 625.61 hours.

To calculate the lodestar, the court multiplies the reasonable hours expended by the reasonable rates for Tuck's counsel. This brings the lodestar figure to $243,279.50.

D.   <u>Reasonableness Under New Hampshire Law</u>

All eight of the "guiding factors" under New Hampshire law support the court's lodestar analysis and the reasonableness of Tuck's requested fees. A brief discussion of each factor illustrates the overlap in the court's analysis of the lodestar.[6]

1.   <u>The Amount Awarded</u>

As explained above, Tuck sought to recover roughly one year's worth of his unpaid six-figure salary, and an award of liquidated damages for the willful nature of the violation. Tuck succeeded on both fronts and the jury awarded him a total of $338,557.44. Considering that the fee is not outsized in proportion to the jury's award, this factor suggests that the amount is reasonable. <u>Cf.</u> Townsend, 164 N.H. at 251 ("[I]t was within the trial court's discretion, given its involvement in the ongoing proceedings, to find that the time claimed to have been spent on successful issues was reasonable.").

2.   <u>Novelty</u>

On the surface, these claims seem like typical employment law and contract disputes. The New Hampshire wage law claim, however, involved a complex multi-factor test used to determine whether Tuck worked as an employee or an independent contractor. <u>See</u> RSA 275:42, II(a)-(g). Thus, the relative complexity of

---

[6] Although it appears as though the court has considered only five of the eight factors, the court has consolidated similar factors: the third combines attorney time, skill, and standing; and the fifth combines the attorneys' success and the benefit bestowed.

the New Hampshire wage law claim bolsters the reasonableness of the lodestar figure. See Funtown, 129 N.H. at 357 (affirming a fee award, in part because "[t]he proceedings were long and convoluted, and required substantial amounts of lawyer and paralegal time").

### 3. Attorney Standing, Skill, and Time

As noted above, Tuck's attorneys—two partners in a Boston law firm—have extensive experience in similar employment litigation. They both have years of experience in practice generally, and in trial specifically. Tuck's counsel also litigated this case over the course of almost two years. The attorneys conducted discovery, participated in motion practice on the parties' cross-motions for summary judgment, and litigated Tuck's claims through trial. Although Tuck did not pursue his FLSA claims at trial, his attorneys tried the New Hampshire wage law claim, the breach of contract claim, and the quantum meruit claim. The submitted time sheets reflect the time and effort expended by Tuck's counsel. See Funtown, 129 N.H. at 357; Demers, 155 N.H. at 665 ("Based upon the amount of work reflected by the record [of counsel's work] before the trial court, we cannot say that the trial court unsustainably exercised its discretion [in awarding fees.]"). Thus, the attorneys' effort and experience support the reasonableness of the lodestar.

### 4. Customary Fees

As discussed above, the fees are commensurate with the customary rates in this region and line of practice. See Funtown, 129 N.H. at 356-57.

5.   Attorneys' Success and the Benefit Conferred to Their Client

As noted above, Tuck's counsel prevailed on the underlying wage law claim to the full extent ($169,278.72) and succeeded in persuading the jury that the violation was willful and worthy of a doubling of the damages for a total of $338,557.44. The success of Tuck's counsel strongly supports the reasonableness of the lodestar amount. See Townsend, 164 N.H. at 251.

For all of the above reasons, the court finds the lodestar ($243,279.50) reasonable. Tuck, however, only requests $217,795.07 in attorney fees. Because his requested fees are less than the lodestar, Tuck's requested fees are clearly reasonable. The court, therefore, grants Tuck's motion for attorney fees in Tuck's requested amount of $217,795.07.

II.   Amount of Costs Awarded

Tuck also moves to recover costs in this matter. Under Federal Rule of Civil Procedure 54(d)(1), "costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1); cf. Bosse v. Litton Unit Handling Sys., Div. of Litton Sys., Inc., 646 F.2d 689, 695 (1st Cir. 1981) (holding that Rule 54(d) governs fee disputes in cases premised on diversity jurisdiction). A successful litigant may recover:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

> (5) Docket fees under section 1923 of this title; [and]
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Costs are narrowly defined in this statute. See, e.g., Taniguchi v. Kan Pac. Saipan, Ltd., 566 U.S. 560, 573 (2012). As explained by the Supreme Court in Taniguchi, "costs are limited to relatively minor, incidental expenses as is evident from § 1920, which lists such items as clerk fees, court reporter fees, expenses for printing and witnesses, expenses for exemplification and copies, docket fees, and compensation of court-appointed experts." Id. As recently as 2016, Judge McAuliffe could locate no authority "which stands for the proposition that attorney expenses are taxable as costs." Onge v. Town of Weare, No. 14-CV-214-SM, 2016 WL 11690245, at *4 (D.N.H. May 11, 2016). The undersigned has likewise found no authority to support that proposition.

Tuck requests $9,988.81 in costs, the line items for which are contained in the timesheets Tuck submitted to the court. See doc. no. 77-1. Defendants object to the following:

- $3,495 in discovery storage and hosting expenses;

- $1,237.50 for mediation services; and

- $1,284.40 in costs for attorneys' travel to the mediation, including Northup's flight.

With respect to discovery storage and hosting expenses, Tuck explains that such costs are attributable to the large number of documents maintained in this

case. The First Circuit, however, "has not permitted costs for overhead expenses for centralized litigation services." Dana-Farber Cancer Inst., Inc. v. Ono Pharm. Co., No. 1:15-CV-13443-PBS, 2021 WL 8566000, at *1 (D. Mass. Mar. 23, 2021). Discovery storage does not fall within any of the enumerated categories of taxable costs in § 1920. The court finds such storage costs are akin to the overhead expenses that Judge Saris disallowed in Dana-Farber. See id. Tuck has not explained how these costs are recoverable as reasonable costs under either federal or state law. The court therefore denies the request for discovery storage costs.

With respect to Tuck's mediation expenses—including flights—Tuck fails to explain how these expenses fit within either § 1920 or the New Hampshire wage law. Attrezzi, LLC v. Maytag Corp., 436 F.3d 32, 43 (1st Cir. 2006) ("[E]xpenses for items such as attorney travel and computer research are not deemed 'costs' within the meaning of the federal statute that provides for recovery of costs by a prevailing party."); Gary Brown & Assocs., Inc. v. Ashdon, Inc., 268 Fed. Appx. 837, 846 (11th Cir. 2008) ("[The prevailing party's] requests for mediation expenses, meals, courier/postage, Lexis-Nexis research, air fare, and lodging are not included under § 1920."). Tuck has not met his burden of showing entitlement to these costs.

The court finds Tuck's remaining costs (totaling $3,971.91) are, however, proper under § 1920 and are supported by Tuck's invoices. And defendants do not object to any of these costs.

The court therefore grants Tuck's request for costs, but in the reduced amount of $3,971.91.

## CONCLUSION

Tuck's motion for attorney fees and costs (doc. no. 77) is granted in part. Tuck is awarded $217,795.07 in attorney fees and $3,971.91 in costs.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

July 24, 2024

cc:     Counsel of Record